**PRESSROOM UNIONS–PRINTERS LEAGUE INCOME SECURITY FUND, Plaintiff-Appellant,**

**v.**

**CONTINENTAL ASSURANCE CO., a Member of the C.N.A. Group, Reserve Life Insurance Co., and its wholly owned subsidiary American Progressive Life & Health Insurance Company of New York, George S. Kriegler, Benjamin A. Kriegler, Labor Security Programs, Inc., and Raymond M. Kriegler, deceased, by John Doe, Mary Moe and Roe Corp. 1–10, the true names of the preceding defendants being presently unknown to plaintiff, the foregoing fictitious names intending to designate the executors, administrators, trustees, successors in interest and heirs-at-law of the said Raymond M. Kriegler, deceased, Defendants-Appellees.**

No. 704, Docket 82–7631.

United States Court of Appeals, Second Circuit.

Argued Jan. 6, 1983.

Decided Feb. 18, 1983.

As Amended on Denial of Rehearing, April 7, 1983.

Vincent R. Fitzpatrick, Jr., New York City (White & Case, Dwight A. Healy, Richard A. Horsch, New York City, Hughes & Hill, H. Robert Powell, Dallas, Tex., of counsel) for defendants-appellees, Reserve Life Ins. Co. and American Progressive Life and Health Ins. Co. of New York.

Robert S. Cohen, New York City (Lans, Feinberg & Cohen, Deborah E. Lans, New York City, of counsel) for defendants-appellees, George S. Kriegler, Benjamin A. Kriegler and Raymond M. Kriegler (deceased).

Before KAUFMAN, TIMBERS and NEWMAN, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

In the last decade, Congress has enacted nearly one hundred statutes granting additional jurisdiction to the federal courts. Areas as diverse as environmental law and child custody have been brought within the purview of the federal judiciary. Exercising this new jurisdiction, however, requires us not only to adjudicate complex disputes, but also to define the limits of our expanded authority. The instant action, brought pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461, provides one such occasion. We are called upon today to determine, as a matter of first impression, whether a pension fund may assert a federal cause of action under the provisions of that important employee benefits statute.

I

The Pressroom Unions–Printers League Income Security Fund ("the Fund") was established in May 1971 to provide life insurance and mutual fund benefits to members of the New York Printing Pressmen's & Offset Workers Union, Local 51. In later years members of two other unions were allowed to participate in the Fund pursuant to their collective bargaining agreements.[1] The Fund currently has approximately 1,700 participants and is financed by contri-

Joseph P. Hoey, Mineola, N.Y. (Suozzi, English & Cianciullo, P.C., Stephen C. Glasser, Mineola, N.Y., of counsel), for plaintiff-appellant.

---

1. Beginning in May 1975 members of the New York Press Assistants and Offset Workers Union, Local 23 became participants in the Fund, and in May 1976 coverage was extended to employees represented by the Paper Handlers and Sheet Straighteners, Local 1.

butions from the employers of the union members. Its management functions are vested in a Board of Directors whose membership consists of union and employer representatives in equal numbers.

The Fund contends that during the period from July 1, 1971 through June 30, 1980 it was the victim of a fraudulent scheme engineered by appellees George S. Kriegler, Benjamin A. Kriegler and Raymond M. Kriegler, deceased. ("Krieglers") The gravamen of this charge is that George and Raymond Kriegler were officers and stockholders of Labor Security Programs, Inc. ("LSP"), a consulting firm engaged by the Fund, and they allegedly caused LSP to enter into insurance contracts at exorbitant rates. Allocation and assignment of such contracts purportedly depended upon the results of a competitive bidding process, but the Krieglers allegedly circumvented this procedure and gave appellees Continental Assurance Co. ("Continental") and Reserve Life Insurance Co. ("Reserve") the exclusive right to sell insurance to the Fund.[2]

The Fund's complaint alleges that the insurance contracts resulted in excessive premium payments to the insurers and extravagant fees to the Krieglers. The Fund further contends that appellees concealed the fraudulent nature of the insurance contracts from the Board of Directors by providing misleading statements and reports. The Krieglers, it is claimed, perpetuated this fraud by providing false assurances to the Board and by misrepresenting the nature of the contracts entered into and the process through which the insurers were selected.

In January 1982 the Fund filed suit in the Southern District of New York asserting that appellees breached their fiduciary duties, and seeking declaratory relief as well as compensatory and punitive damages. Jurisdiction was said to be based upon the relevant provisions of the Employee Retirement Income Security Act, 29 U.S.C. § 1132(e) ("ERISA") and the Welfare and Pension Plans Disclosure Act, 29 U.S.C. § 308(g) ("WPPDA").[3] The defendants moved to dismiss the action pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction, claiming that neither statute afforded the Fund a cause of action cognizable in federal court. The district judge granted the defendants' motion and dismissed the complaint on June 3, 1982. He also denied the Fund's request to amend its complaint. Subsequently the Fund moved for reconsideration of the district court's order, and sought to substitute individual plan participants as plaintiffs. Judge Conner denied this request,[4] and the Fund now appeals from the judgment entered on his order and from the supplemental order denying its motion for reconsideration.[5]

## II

The jurisdictional provisions of ERISA do not on their face authorize a pension fund to assert a cause of action. 29 U.S.C. § 1132(e)(1) gives the district courts "exclusive jurisdiction of civil actions under this subchapter brought by the Secretary [of

2. Continental underwrote the life insurance contracts for plan participants from 1971 until July 1979. Thereafter Continental's rights and obligations were assumed by Reserve. Reserve, a Texas corporation not licensed to do business in New York State, transacted its affairs in New York through its wholly-owned subsidiary, American Progressive Life & Health Corporation.

3. The WPPDA antedated and was repealed by ERISA. The relevant section of ERISA, however, provides that the WPPDA "shall continue to apply to any conduct and events which occurred before [ERISA's] effective date, [January 1, 1975]." 29 U.S.C. §§ 1031(a)(1), 1144.

4. In its motion for reconsideration, the Fund, for the first time, identified those persons it sought to substitute as plaintiffs. These individuals have since filed a separate action in the United States District Court for the Southern District of New York, Buccino v. Continental Assurance Co., No. 82 Civ. 5530. The parties have represented, however, that there are potential statute of limitations problems which may preclude a full decision on the merits in that action.

5. The Fund does not challenge the district court's finding that there was no jurisdiction under the WPPDA.

Labor] or by a participant, beneficiary or fiduciary." Similarly, § 1132(a), the Act's provision dealing with standing, states that the Secretary or a "participant, beneficiary or fiduciary" may bring an action for civil enforcement of the Act's fiduciary and other provisions.

The Fund does not contend that it may be viewed as one of the parties specifically authorized to file suit under these provisions; rather, it claims that these sections are not exclusive and do not foreclose the possibility of other parties suing under the Act. In support of this assertion, the Fund argues that § 1132(d)(1), which states that "[a]n employee benefit plan may sue or be sued under this subchapter as an entity," contemplates the existence of a cause of action which a pension fund may assert, and therefore necessarily implies that federal jurisdiction would exist for such suits.

■ It is beyond dispute that only Congress is empowered to grant and extend the subject matter jurisdiction of the federal judiciary, and that courts are not to infer a grant of jurisdiction absent a clear legislative mandate. *Rice v. Railroad Co.,* 66 U.S. (1 Black) 358, 374, 17 L.Ed. 147 (1861); *Dalehite v. United States,* 346 U.S. 15, 30–31, 73 S.Ct. 956, 965, 97 L.Ed. 1427 (1953); *see also Middlesex County Sewerage Authority v. National Sea Clammers Assoc.,* 453 U.S. 1, 13–18, 101 S.Ct. 2615, 2622–25, 69 L.Ed.2d 435 (1981). We therefore decline to construe § 1132(d)(1) as *sub silentio* conferring jurisdiction over actions brought by parties other than those specified in § 1132(e)(1).

We have previously held that an employer, also not named in ERISA's jurisdictional provisions, may not bring suit under the Act. *See Stone & Webster Engineering*

*Corp. v. Ilsley,* 690 F.2d 323, 326 (2d Cir. 1982). While this does not, of course, resolve the instant dispute, it does undercut the Fund's reliance on *Fentron Industries, Inc. v. National Shopmen Pension Fund,* 674 F.2d 1300 (9th Cir.1982) *("Fentron").* In *Fentron* the court held that an employer could bring an action pursuant to ERISA. Although neither § 1132(a) nor § 1132(e)(1) specifically authorizes suits by employers, the court observed "[t]here is nothing in the legislative history to suggest ... that the list of parties empowered to sue under this section is exclusive...." *Fentron, supra,* 674 F.2d at 1305.[6]

In our view, the *Fentron* court applied an inappropriate standard in resolving this issue. We focus not on whether the legislative history reveals that Congress intended to *prevent* actions by employers or other parties, but instead on whether there is any indication that the legislature intended to *grant* subject matter jurisdiction over suits by employers, funds, or other parties not listed in § 1132(e)(1). As the Ninth Circuit noted, ERISA's legislative history is silent on both of these questions, *see, e.g.,* H.R. Conf.Rep. No. 1280, 93rd Cong. 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad. News 4639, 5038, 5109 (1974), and we therefore conclude that absent such expression, § 1132(e)(1) should be viewed as an exclusive jurisdictional grant.[7]

What makes the instant case both unique and difficult is the language of § 1132(d)(1) which provides that a fund "may sue or be sued under this subchapter as an entity." There is no doubt that this section authorizes suits against a fund. The difficulty arises with those portions of the section which authorize a fund to bring an action.

---

6. The Fund mistakenly relies on *United States Steel Corp. v. Pennsylvania Human Relations Commission,* 669 F.2d 124 (3rd Cir.1982), in support of its claim that § 1132(a) is not exclusive. The court in *United States Steel* did not imply that the specific standing provision of § 1132(a) was not exclusive, but held only that on the facts of that case the plaintiff employer could be viewed as a plan fiduciary and therefore have standing *as a fiduciary* under the Act. *Id.* at 126–28.

7. Since the plaintiff has not claimed subject matter jurisdiction under 28 U.S.C. § 1331 (1976) in its complaint nor in its papers submitted to this Court, we express no views on the possible relevance of that statute. *See Monell v. Department of Social Services,* 532 F.2d 259, 260 n. 1 (2d Cir.1976), *rev'd on other grounds,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

The uncertainty generated by this language, however, is troubling only upon first blush. More careful analysis demonstrates that § 1132(d)(1) is not inconsistent with the specific and exclusive grant of subject matter jurisdiction contained in § 1132(e)(1). Subsection (d)(1) only establishes the right of employee benifit plans created by ERISA to sue and be sued like corporations and other legal entities. Without such a provision a pension plan would not be a legally cognizable body. *See, e.g., Coverdell v. Mid-South Farm Equipment Assoc.,* 335 F.2d 9, 12–13 (6th Cir.1964). Affording plans the power to sue does not, however, imply that they may bring actions under ERISA; it merely authorizes suits to be brought by funds in other situations where there would properly be jurisdiction.[8] For example, if a fund became involved in a contract dispute, and wished to pursue a state law contract claim, § 1132(d)(1) would allow the fund to bring such an action in its own name.

■ The Fund would have us accept the argument that the carefully drafted provisions extending federal jurisdiction and standing to pension plan participants, beneficiaries and fiduciaries were incomplete, and that those sections do not foreclose the possibility of actions brought by other parties. In light of the frequent references in the Act and its legislative history to "participants, beneficiaries and fiduciaries," *see, e.g.,* 29 U.S.C. § 1132(h); H.R.Rep. No. 533, 93rd Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad.News 4655 (1974), this conclusion is untenable. It is more probable that Congress's use of the words "or sue as an entity" in § 1132(d)(1) were not considered in the context of standing or jurisdiction. This interpretation is both more plausible than the Fund's view, and, as we have noted, resolves the superficial ambiguity between § 1132(d)(1) and the standing and jurisdictional provisions.

Accordingly, we hold that the district court was without subject matter jurisdiction over the Fund's complaint and Judge Conner properly dismissed the action.

## III

The Fund further contends that the district court erred in denying its motion for leave to amend the complaint and substitute plan participants as plaintiffs.

The longstanding and clear rule is that "if jurisdiction is lacking at the commencement of [a] suit, it cannot be aided by the intervention of a [plaintiff] with a sufficient claim." *Pianta v. H.M. Reich Co.,* 77 F.2d 888, 890 (2d Cir.1935); *see also United States ex rel. Rudick v. Laird,* 412 F.2d 16 (2d Cir.), *cert. denied,* 396 U.S. 918, 90 S.Ct. 244, 24 L.Ed.2d 197 (1969). The Fund attempts to escape this doctrine by relying on 28 U.S.C. § 1653 which provides that "defective allegations of jurisdiction may be amended, upon terms in the trial or appellate courts."

■ While we have previously noted that § 1653 should be broadly construed to avoid dismissals of actions on technical grounds, *John Birch Society v. National Broadcasting Co.,* 377 F.2d 194, 198–99 (2d Cir.1967), we have never allowed that provision to create jurisdiction retroactively where none existed. Section 1653 allows "amendment only of defective *allegations* of jurisdiction; it does not provide a remedy for defective jurisdiction itself." *Field v. Volkswagenwerk AG,* 626 F.2d 293, 306 (3rd Cir.1980) (emphasis in original). In this case the Fund seeks not to remedy inadequate jurisdictional allegations, but rather to substitute a new action over which there is jurisdiction for one where it did not exist. Accordingly, Judge Conner properly denied the Fund's motion to amend its complaint pursuant to that provision.[9]

---

**8.** The district judge indicated that in some circumstances a fund might be a participant, beneficiary or fiduciary, in which case it would be able to assert a cause of action in its own name. In the district court's view this possibility resolved the ambiguity between § 1132(e)(1) and § 1132(d)(1). We find it difficult to imagine a situation in which a fund could fulfill one of these roles. *See* 29 U.S.C. § 1002(7), (8), (21) (definitions of "participant," "beneficiary," and "fiduciary"). We do

not, however, believe it is necessary to accept the district court's view to reconcile the apparently contradictory provisions.

**9.** Though we have previously recognized that an amendment adding a party that brings the case within a district court's jurisdiction can be granted, *Hackner v. Guaranty Trust Co.,* 117 F.2d 95 (2d Cir.), *cert. denied,* 313 U.S. 559 (1941), such an amendment, where new service is required, does not relate back to the original

The Fund's reliance on *Rheingold Breweries Pension Plan v. PepsiCo, Inc.,* 2 Empl. Ben.Cas. 2406 (S.D.N.Y.1981), is also misplaced. In *Rheingold* Judge Stewart permitted amendment after holding that the plaintiff fund had no standing to sue under § 1132(a). The court, however, never reached the more fundamental issue of whether there was subject matter jurisdiction over such an action. Moreover, the *Rheingold* opinion, filed before the Fund's suit was commenced, should have put the Fund in this case on notice that it would have difficulty in pressing its claims under its own name. Even if the district court had the authority to consider the propriety of the amendment request, therefore, it could have properly denied the motion in its discretion. *See Cox v. Livingston,* 407 F.2d 392 (2d Cir.1968) (motions to amend pursuant to § 1653 are addressed to the court's discretion). If the Fund was aware of Judge Stewart's ruling, it has advanced no reason for its original failure to name alternative plaintiffs in the event that Judge Conner followed *Rheingold* and refused to allow the Fund to sue in its own name. In the event that the Fund was unaware of the *Rheingold* case, it cannot now assert that it detrimentally relied on that portion of the opinion where the court allowed the plaintiff to amend its complaint.

Accordingly, we find Judge Conner properly concluded that there was no subject matter jurisdiction to hear the claims asserted and he correctly granted appellees' motion to dismiss. Because it was without jurisdiction, the judge appropriately denied the request to amend the complaint. The judgment and supplemental order of the district court are affirmed.

suit, *id.* at 99, and would be a new action, *id.; York v. Guaranty Trust Co.,* 143 F.2d 503, 518 (2d Cir. 1944) (construing *Hackner* ), *rev'd on other grounds,* 326 U.S. 99 (1945). In such circumstances, the district court has discretion whether to permit the "amendment," *cf. National Maritime Union v. Curran,* 87 F.Supp. 423, 426 (S.D.N.Y.1949), and Judge Conner properly exercised his discretion to deny the motion to amend after noting that possible statute of limitations defenses distinguished this case from *Hackner,* where no such obstacles appeared.

Appellant also claims that the district court was foreclosed from dismissing its complaint pursuant to Fed.R.Civ.P. 17(a). That rule in relevant part states, "No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed ... [for] joinder or substitution of the real party in interest." This argument, however, ignores the fact that the action was not dismissed for failure to name the real party in interest, but rather because the district court had no jurisdiction over the suit. Rule 17(a) does not, of course, expand the jurisdiction of the federal judiciary. *See* Fed.R.Civ.P. 82.